# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAY ANTHONY JONES, | 1:09-CV-00751 AWI SMS HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| J. D. HARTLEY, Warden, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Merced, following his conviction by jury trial on April 29, 1976, of first degree murder. See Petition at 2.  Petitioner was sentenced to serve an indeterminate term of 7 years to life in state prison with possibility of parole. Id.

On March 13, 2008, a parole suitability hearing was held before the California Board of Parole Hearings ("Board") to determine Petitioner's eligibility for parole. See Hearing Transcript attached to Answer, Exhibit 1 (hereinafter "Transcript"). Petitioner attended the hearing and was

represented by his attorney. Id. At the conclusion of the hearing, the Board denied parole and deferred rehearing for one year. Id. at 121.

On October 23, 2008, Petitioner filed a petition for writ of habeas corpus in the Merced County Superior Court challenging the Board's decision. See Answer, Exhibit 1. On January 14, 2009, the petition was denied in a reasoned decision. See Answer, Exhibit 2. The superior court issued an amended order on January 15, 2009. See Answer, Exhibit 3. Petitioner then filed a habeas petition in the California Court of Appeals, Fifth Appellate District, on January 29, 2009. See Answer, Exhibit 4. The petition was denied on February 26, 2009. See Answer, Exhibit 5. On March 9, 2009, Petitioner filed a petition for review in the California Supreme Court. See Answer, Exhibit 6. On April 15, 2009, the petition was denied. See Answer, Exhibit 7.

On April 28, 2009, Petitioner filed the instant petition for writ of habeas corpus in this Court. The petition for writ of habeas corpus challenges the 2008 decision of the Board denying parole. Petitioner claims there is not "some evidence" to show he is currently a dangerous risk to society in violation of his constitutional rights. He further claims the Board pursues a discriminatory practice by finding Petitioner's crime to be "especially cruel" so as to deny parole. On July 20, 2009, Respondent filed an answer to the petition. Petitioner filed a traverse to Respondent's answer on August 12, 2009.

**FACTUAL BACKGROUND**[1]

According to the Merced Sheriff's Office reports, on January 3, 1978, at approximately 3:34 p.m., officers were dispatched to Salter's Market on East 21st Street in Merced as it was reported that a man had been shot during a robbery at the establishment. Officers reported to the scene where they observed the victim, Hubert Morgan, 60 years old, lying in a prone position between two checkout counters, approximately five feet from the entrance. An officer checked the condition of the victim and began administering CPR as the victim did not appear to be breathing or have a pulse at that time. The officer was assisted by other deputies until the arrival of the ambulance. It was noticed that the victim had blood stains on his lower right abdomen area

---

[1]The information is derived from the factual summary as set forth in the parole hearing proceedings. See Transcript at 25-30.

2

with a single bullet hole slightly lower, into the right of his navel. Further checking of the area revealed a cash register open and emptied with a quarter lying on the floor between the register and the counter.

According to Mr. King, a friend of the victim, he and the victim were in the store preparing to make some popcorn at the checkout counter when the suspect, described as a black male wearing a black ski cap and blue jacket, entered the store and proceeded to the soft drink counter. King stated he remarked to the suspect, "You look like O.J. Simpson." According to King, at that time, the suspect approached the counter, produced a weapon, and demanded money. The victim at the time opened the cash drawer and the suspect reached for the cash and the gun discharged, striking Morgan, who fell to the floor.

Deputies searched the area, including small cabins located approximately 600 feet northeast of the store. Each cabin was searched, including one which had been burned. Officers did not enter the burned cabin as the doors and most of the windows were boarded and the interior of the cabin was observed only through the windows. The search and investigation continued until approximately midnight, then terminated for the evening.

On January 4, 1976, at approximately 9:00 a.m., a detective from the Merced Sheriff's Office was contacted by an informant who named Petitioner as the perpetrator of the offense and was afraid to turn himself in. The detective later received a phone call from Petitioner who stated he wished to talk to the detective and would meet him at the A&W parking lot on East Sixteenth Street in Merced. Petitioner met the detective at that location and was placed in custody and transported to the Sheriff's Office for further questioning.   During the interview, Petitioner stated the gun had discharged by accident and that he did not intend to shoot the victim. He had reached into the cash drawer with the gun in his hand. The victim moved the cash drawer and the gun discharged, hitting the victim. According to Petitioner, he then departed the store, ran north, turned up the alley, and hid in the burned cabin in the rafters. Petitioner stated he had thrown the gun over the fence after running from the scene of the robbery. He later accompanied officers to the area, indicating he had thrown the gun into a residence's yard. The area was searched with negative results.

On January 8, 1976, Petitioner was interviewed by the detective and stated the weapon had been thrown into a canal in the country. Petitioner showed the officers the location, indicating the gun might be at a location at the head gate. A search was conducted with negative results. Petitioner then spoke to the detective alone, stating that he had told his sister that he had placed the gun under the chicken house at the Jones's residence. He indicated he observed his sister proceed from the area of the chicken house to the canal, at which time he yelled at her, believing his sister had already disposed of the weapon. Petitioner later informed officers that his sister did not know anything about the weapon.

Petitioner requested to call another sister. He was allowed a phone call, at which time he made contact with Harvey Williamson, who requested of the deputy that he be allowed to meet Petitioner in the city. Clearance was granted and the deputies arranged the meeting, at which time Williamson left the area for several minutes, then returned to produce a brown paper bag containing a blue steel .38-caliber revolver, saying, "That's it." Petitioner was allowed to view the weapon and stated, "That's it. I can tell you by the burn mark there," pointing to a trigger which showed a discoloration from being case-hardened.

On January 28, 1976, information alleging a violation of Section 187 of the California Penal Code, murder, a felony, was filed, naming Petitioner. On March 31, 1976, the court found Petitioner guilty of first-degree murder.

**DISCUSSION**

I.    Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

1    Petitioner is in custody of the California Department of Corrections pursuant to a state
2 court judgment. Even though Petitioner is not challenging the underlying state court conviction,
3 28 U.S.C. § 2254 remains the exclusive vehicle for her habeas petition because she meets the
4 threshold requirement of being in custody pursuant to a state court judgment. Sass v. California
5 Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370
6 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a
7 state prisoner in custody pursuant to a state court judgment, even when the petition is not
8 challenging [her] underlying state court conviction.'").
9    The instant petition is reviewed under the provisions of the Antiterrorism and Effective
10 Death Penalty Act which became effective on April 24, 1996.  Lockyer v. Andrade,  538 U.S. 63,
11 70 (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless the
12 adjudication of the claim "resulted in a decision that was contrary to, or involved an
13 unreasonable application of, clearly established Federal law, as determined by the Supreme Court
14 of the United States" or "resulted in a decision that was based on an unreasonable determination
15 of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C.
16 § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.
17    As a threshold matter, this Court must "first decide what constitutes 'clearly established
18 Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,
19 *quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this
20 Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as
21 of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other
22 words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or
23 principles set forth by the Supreme Court at the time the state court renders its decision." Id.
24    Finally, this Court must consider whether the state court's decision was "contrary to, or
25 involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at
26 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may
27 grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme]
28 Court on a question of law or if the state court decides a case differently than [the] Court has on a

set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

In this case, because the California Supreme Court summarily denied the habeas petition, this Court must "look through" that decision to the decisions below. Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n.3 (1991).

II.   Review of Petition

A parole release determination is not subject to all the due process protections of an adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see also Greenholtz, 442 U.S. at 12 (explaining that due process is flexible and calls for procedural

protections that particular situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, the only procedural process to which an inmate is entitled is: 1) the inmate must receive advance written notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard," Greenholtz, 442 U.S. at 16; and 3) if the inmate is denied parole, the inmate must be told why "he falls short of qualifying for parole." Id.

As to these procedural protections, Petitioner was provided with all that is required. He was given advanced written notice of the hearing, an opportunity to submit materials for the Board's consideration, an opportunity to be heard, representation by an attorney, and a written decision explaining the reasons parole was denied.

"In Superintendent v. Hill, the Supreme Court held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by *some evidence* in the record.' 472 U.S. 445, 454 (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)." Sass v. California Board of Prison Terms, 461 F.3d 1123, 1128 (9th Cir.2006) (italics added); Irons v. Carey, 505 F.3d 846, 851 (9th Cir.2007), *quoting* Hill, 472 U.S. at 457 ("We have held that 'the Supreme Court ha[s] clearly established that a parole board's decision deprives a prisoner of due process with respect to this interest if the board's decision is not supported by 'some evidence in the record,' or is 'otherwise arbitrary.'"). In assessing "whether a state parole board's suitability determination was supported by 'some evidence' in a habeas case, our analysis is framed by the statutes and regulations governing parole suitability determinations in the relevant state." Irons, 505 F.3d at 851. Here, the Court must look to California law and review the record. In reviewing the record and determining whether the "some evidence" standard is met, the Court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence. Sass, 461 F.3d at 1128.

Further, the California Supreme Court more recently stated:

> "[T]he relevant inquiry is whether the circumstances of the commitment offense, when considered in light of other facts in the record, are such that they continue to be predictive of current dangerousness many years after the commission of the offense. This inquiry is, by necessity and by statutory mandate, an individualized one, and cannot be undertaken simply by examining the circumstances of the crime in isolation, without consideration of the passage of time or the attendant changes in the inmate's psychological or mental attitude.

In re Lawrence, 44 Cal.4th 1181, 1221 (2008). The nature of the commitment offense "does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety." Id. at 1214.

In this case, the Merced County Superior Court reviewed the Board's decision and determined that there was some evidence supporting the Board's finding that Petitioner posed an unreasonable risk of danger to the public if released. See Answer, Exhibit 3. The superior court noted that the California Supreme Court recently opined in In re Lawrence, 44 Cal.4th 1181, 1190-91 (2008), that a decision denying parole may be based on the circumstances of the offense or other immutable factors, "but some evidence will support such reliance only if those facts support the ultimate conclusion that an inmate continues to pose an unreasonable risk to public safety." See Answer, Exhibit 3. The superior court then noted that the commitment offense in this case was not an isolated incident. The court noted that the Board found it significant that the murder in this case was a "culmination of Petitioner's ongoing and escalating pattern of criminal behavior which included violence." Id. Furthermore, the court found that the circumstances of the offense and prior criminal behavior were not the only reasons for the parole denial; the Board had also considered the fact that Petitioner had sustained some 17 serious prison disciplinary violations during his incarceration. Id.

In addition, the court noted that the Board had found Petitioner's various stories and versions of the crime and his previous drug history disconcerting and concluded that Petitioner had not been not entirely forthcoming regarding the underlying murder. He had told the Board that he did not intend to commit a robbery or murder during the incident in question, despite the

fact that he entered the store carrying a loaded firearm and the fact that he admitted he had participated in strong-arm robberies in the past. In addition, since the time he was first incarcerated, he claimed he committed the robbery because of a heroin addiction, but as of 2005, he now claims the heroin story was a complete fabrication. In light of Petitioner's various conflicting statements, the Board concluded that Petitioner lacked insight into the commitment offense and needed to work on self-help issues. Id.

The superior court concluded that the circumstances of the commitment offense, the lack of insight into the murder, the ongoing, escalating, and violent history of criminality preceding the murder and continuing into prison, and the need to work on self-help issues provided at least "some evidence" to support the Board's finding that Petitioner remained an unreasonable risk of danger to the public. In light of the record, the superior court's decision was not contrary to or an unreasonable application of Federal law as determined by the Supreme Court. Furthermore, Petitioner has not shown that the superior court based its decision on an unreasonable determination of the facts in light of the evidence presented.

In addition, the superior court rejected Petitioner's claim that the Board relied on discriminatory practices to deny parole. Petitioner fails to demonstrate that the superior court's decision was contrary to or an unreasonable application of Federal law.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus be DENIED; and
2. Judgment be entered in favor of Respondent.

This Findings and Recommendations is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the

1  objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. §
2  636 (b)(1)(C). The parties are advised that failure to file objections within the specified time
3  may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th
4  Cir. 1991).

6  IT IS SO ORDERED.

7  **Dated:   September 8, 2009**           /s/ Sandra M. Snyder
                                            UNITED STATES MAGISTRATE JUDGE